## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
---------------------------------------------------------------- x
In re Application of                                             :
                                                                :
RICARDO REIS VEIGA,                                             :
an American citizen, and                                        :
                                                                :
RODRIGO PÉREZ PALLARES,                                        ::   Case No. _____
an Ecuadorian citizen,                                          :
                                                                :
To Issue a Subpoena for the Taking of a Deposition             :
and the Production of Documents for Use in a Foreign           :
Proceeding.                                                     :
---------------------------------------------------------------- x
```

### APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
### TO ISSUE A SUBPOENA TO ALBERTO WRAY FOR THE TAKING OF
### A DEPOSITION AND THE PRODUCTION OF DOCUMENTS FOR USE
### IN A FOREIGN PROCEEDING

WILLIAMS & CONNOLLY LLP
Kevin T. Baine (Bar No. 238600)
Beth A. Stewart (Bar No. 486684)
Daniel Pierce (Bar No. 988836)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029


*Attorneys for Ricardo Reis Veiga*

RIVERO MESTRE & CASTRO
Paul E. Dans (Bar No. NY-0115)
Andrés Rivero*
Jorge A. Mestre*
Paul E. Dans
2525 Ponce de Leon Boulevard
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505


*Attorneys for Rodrigo Pérez Pallares*

*Applications for Admission Pending

1.     Rodrigo Pérez Pallares and Ricardo Reis Veiga (the "Applicants") apply to this Court for an Order, under 28 U.S.C. § 1782, requiring Alberto Wray Espinosa ("Wray") to produce documents and appear at a deposition. The Applicants are citizens of the United States and Ecuador, respectively, both of whom are living in the United States. As explained below and in the accompanying Memorandum, they seek this evidence in aid of their defense against an unfounded criminal prosecution pending against them in Ecuador.

2.     The criminal charges against the Applicants arise out of their work as attorneys for Texaco Petroleum Company ("TexPet"), now a fifth-tier subsidiary of Chevron Corporation. TexPet had engaged in oil operations in Ecuador until 1992 as part of a Consortium with Ecuador's state-owned oil company. After TexPet completed certain environmental remediation that it had agreed to perform, the Government of Ecuador ("GOE") and Ecuador's state-owned oil company granted TexPet a Final Release of any future claims for damage to the environment arising from the Consortium's oil operations.

3.     Chevron was subsequently sued in Lago Agrio, Ecuador for damage to the environment based on the Consortium's oil operations prior to 1992—the so-called "*Lago Agrio* litigation."[1] The Government of Ecuador ("GOE"), which has stated it will receive the bulk of any recovery in the *Lago Agrio* litigation, has filed criminal charges against the former Government officials and others, including Messrs. Veiga and Pérez, who executed the Final Release, which Chevron contends constitutes a bar to recovery in the case. The criminal charge

---

[1] Chevron Corporation has also filed an application seeking discovery from Mr. Wray. Chevron seeks materials in connection with two foreign proceedings: the *Lago Agrio* litigation and an arbitration brought by Chevron under the Bilateral Investment Treaty against the Republic of Ecuador. As discussed here, Applicants seek discovery for use in a separate proceeding, namely the criminal case against them.

is, in essence, that the Final Release was executed based on the Government's certification that certain environmental remediation had been completed, when it had not been—a charge that Messrs. Veiga and Pérez deny.

4.    Mr. Wray, the attorney who filed the *Lago Agrio* litigation on behalf of the plaintiffs, is cited by name three times in the Prosecutor General's recitation of evidence allegedly supporting the criminal charges against the Applicants. He thus has knowledge of the facts upon which the charges are based. He also has knowledge relevant to the defense that the criminal charges are unfounded and have been brought in bad faith to pressure Chevron to pay billions of dollars to settle the *Lago Agrio* litigation.

5.    The United States Department of State has found that criminal prosecutions have been brought in Ecuador for precisely this kind of improper purpose: "Criminal complaints and arrest warrants against foreign company officials have been used to pressure companies involved in commercial disputes." U.S. State Dep't, 2009 Investment Climate Statement—Ecuador, Bureau of Economic, Business, and Energy Affairs (February 2009).[2]

6.    The Applicants already possess evidence of the joint strategy of the Government of Ecuador and Mr. Wray to use criminal charges to advance the *Lago Agrio* litigation. In particular, the Applicants are in possession of an email from Ecuador's Deputy Attorney General to Mr. Wray, who was then lead counsel in the *Lago Agrio* Litigation. The Deputy confirmed to Mr. Wray that the Attorney General was "searching for a way to nullify or undermine the value" of the Release, and "wants to criminally try those who executed" the Release, notwithstanding the fact that "the evidence of criminal liability . . . was rejected by the prosecutor." *See* Ex. 1 to Declaration of Beth A. Stewart. (In fact, the Prosecutor General in Ecuador had notified the

---

[2] Available on-line at http://www.state.gov/e/eeb/rls/othr/ics/2009/117668.htm.

Court on three separate occasions that criminal charges were unwarranted.)  The Applicants seek to discover, among other things, the nature and full extent of the communications between Mr. Wray (and other representatives of the plaintiffs) and the GOE.

7.     The Applicants also possess evidence that Mr. Wray supervised or participated in the formulation of falsified expert reports that purport to document environmental contamination. In particular, discovery obtained by Chevron from Dr. Charles W. Calmbacher, a former technical expert in the *Lago Agrio* litigation, reveals that two expert reports filed on behalf of the *Lago Agrio* plaintiffs in Dr. Calmbacher's name, purporting to show contamination, were directly contrary to his conclusions that no such contamination existed.  According to Dr. Calmbacher's testimony, these reports and others submitted by other experts were prepared in Respondent Wray's law office in Ecuador.  The validity of these expert reports is directly relevant to the allegation in the criminal case that environmental contamination exists—and directly relevant to the defense that the remediation was in fact performed.  Applicants seek to discover, among other things, what knowledge Mr. Wray has concerning the submission of false reports that purport to support the false allegation that TexPet did not perform the remediation it had agreed to perform.

8.     This application meets the statutory requirements of Section 1782, which provides as follows:

> (a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782 (2006).

9.      First, according to his online biography, Mr. Wray "practices in international

litigation and arbitration in Washington, D.C." as Of Counsel with the Washington, D.C. law

firm Foley Hoag, LLP.  He is therefore "found" in this judicial district for purposes of Section

1782 by force of his employment in Washington, D.C.

10.      Second, the discovery sought is for use in a criminal proceeding currently pending

in Ecuador against Applicants.  On August 26, 2008, the Prosecutor General of Ecuador

commenced a criminal proceeding against Mr. Pérez and Mr. Reis Veiga, as well as former GOE

officials and others.  On April 29, 2010, the Prosecutor General issued a *Dictamen Fiscal*

*Acusatorio* ("Prosecutor's Accusation") against the Applicants which, when formally served on

the Applicants, will trigger the scheduling of a preliminary hearing within 10 to 20 days at which

Applicants will be called upon to present evidence in their defense.  Time is, therefore, of the

essence to these individuals.

11.      Third, as defendants in the criminal proceedings, Applicants each qualify as an

"interested person" within the meaning of Section 1782.

12.      The discretionary factors set out by the United States Supreme Court in *Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), favor granting the application.

First, the Respondent Wray is not a party to the criminal proceedings in Ecuador, and his

evidence is therefore unavailable in that proceeding without this Court's assistance.  542 U.S. at

264.  ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's

jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

absent § 1782(a) aid.").  Second, the nature and character of the proceedings in Ecuador warrant

the Court's assistance, *id.*—American and Ecuadorian citizens face criminal charges affecting

their personal liberty based on their professional work as attorneys, and they seek to prove that

they are the victims of the very kind of prosecutorial abuse that the United States Department of State has found to occur in Ecuador. Third, the application is not an attempt to circumvent proof-gathering restrictions in the foreign proceedings, *id.,* but rather is a good-faith effort to secure relevant evidence that is beyond the jurisdiction of the foreign court. *Id.* Finally, the discovery requests are not unduly intrusive or burdensome. *Id.*

13.     The discovery Mr. Pérez and Mr. Reis Veiga are seeking goes directly to the validity of the charges and the good or bad faith with which they have been brought. Evidence that the criminal charges have been brought for improper economic or political purposes would support (a) a motion for dismissal of the charges, (b) a subsequent action known in Ecuador as *prevericato* – akin to the U.S. doctrine of prosecutorial misconduct, and (c) an opposition to a request for extradition. And evidence that expert reports in the *Lago Agrio* litigation are themselves fraudulent could seriously undermine the factual premises of the criminal charges.

14.     For these reasons, Mssrs. Pérez Pallares and Reis Veiga respectfully request that they be authorized to serve the subpoena attached hereto as Annex A to this Application.

Dated:  June 8, 2010

Respectfully submitted,

WILLIAMS & CONNOLLY LLP
Kevin T. Baine (Bar No. 238600)
Beth A. Stewart (Bar No. 486684)
Daniel Pierce (Bar No. 988836)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

*Attorneys for Ricardo Reis Veiga*

Paul E. Dans (Bar No. NY-0115)
Andrés Rivero*
Jorge A. Mestre*
RIVERO MESTRE & CASTRO
2525 Ponce de Leon Boulevard
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

*Attorneys for Rodrigo Pérez Pallares*

*Applications for Admission Pending*

# ANNEX A

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

RODRIGO PÉREZ PALLARES and RICARDO REIS
VEIGA,

for an Order to Conduct Discovery for Use in Foreign Proceedings

Applicants,

**SUBPOENA IN A CIVIL CASE**

for use in a foreign proceeding
*Instruccion Fiscal No. 20-2008, Corte Suprema de
Justicia, Quito, Ecuador*

CASE NUMBER:

TO:  Alberto Wray Espinosa

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  See Exhibit B.

| PLACE OF DEPOSITION  Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001 | DATE AND TIME<br>9:00 a.m._____, 2010 |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A.

| PLACE  Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001 | DATE AND TIME<br>9:00 a.m._____,2010 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER   Kevin T. Baine, Esq.<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005 | Telephone (202) 434-5000<br>Facsimile (202) 434-5029 |

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## **EXHIBIT A**

### DOCUMENTS TO BE PRODUCED

### DEFINITIONS

1.     "And" includes the word "or" and vice-versa.

2.     "Any" includes the word "all" and vice-versa.

3.     As used herein, the terms "DOCUMENT" or "DOCUMENTS" shall mean all

COMMUNICATIONS in a tangible form, however produced, reproduced, or stored on any

electronic media, and shall include, but shall not be limited to, the following: all records,

memoranda, reports, financial statements, handwritten and other notes, transcripts, papers,

indices, letters, envelopes, telegrams, cables, telex messages, tabulations, work papers,

timesheets, statements, summaries, opinions, journals, desk calendars, appointment books,

diaries, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals,

notes or summaries of telephone conversations or messages or other COMMUNICATIONS of

any type, video recording, photographs, tape or other recordings, punch cards, discs, data cells,

drums, printouts, and other data compilations from which information can be obtained,

electronically-stored information, correspondence, teletype messages, electronic mail, instant

messages, internal memoranda, agreements, diary entries, minute books, financial records,

accounting records, income tax returns, ledgers, journals, audits, receipts, canceled checks, check

stubs, drafts and other written, deeds, leases, mortgages, assignments, insurance policies, or other

instruments related to real or personal property printed or typed matter, diagrams, plans, pictures,

travel, entertainment, or expense records or reports or any other tangible thing that constitutes

matter. The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact

copies or reproductions of all such written, printed, typed, recorded or graphic material or matter

upon which notations or markings in writing, print or otherwise have been made which do not appear in the originals.

    4.     The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

    5.     The phrase "CRIMINAL INVESTIGATION(S)" or "CRIMINAL PROCEEDING(S)" shall refer to all investigations or other proceedings RELATED TO actual or potential criminal accusations or charges RELATING TO the SETTLEMENT AND RELEASE AGREEMENTS, the LAGO AGRIO LITIGATION, THE AGUINDA LITIGATION or the factual allegations therein.  This definition includes without limitation all investigations or other proceedings RELATED TO the following documents:

    a.    Comptroller General of Ecuador Genaro Peña Ugalde's Criminal Complaint filed with the Prosecutor General of Ecuador on October 29, 2003

    b.    Prosecutor General Mariana Yépez Andrade's Order Initiating the Preliminary Investigation for Environmental Crimes and Fraud issued on May 10, 2004

    c.    Prosecutor General of Ecuador Cecelia Armas's Motion to Dismiss the Fraud Charges filed in the Criminal Division of the Supreme Court of Ecuador on August 9, 2006

    d.    Public Prosecutor of Pichincha Marianita Vega Carrera's Motion to Dismiss the Environmental Crimes Charges filed in the Third Criminal Court of Napo on September 4, 2006

e. Order Requesting Comptroller General's Opinion on Prosecutor General Armas's Motion to Dismiss the Fraud Charges issued by the Supreme Court of Justice on October 27, 2006

f. Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme Court of Justice on March 1, 2007

g. Comptroller General Carlos Polít Faggioni's Motion Requesting that the Criminal Case Remain Open filed in the Supreme Court of Justice on May 18, 2007

h. Order Requiring Prosecutor General to Reissue Opinion issued by Supreme Court of Justice on June 11, 2007

i. Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme Court of Justice on June 14, 2007

j. District Prosecutor Washington Pesántez's Opinion Affirming the Motion to Dismiss the Environmental Crimes Charges (March 13, 2007)

k. Order Dismissing the Environmental Crimes Charges issued by the Third Criminal Court of Napo on March 16, 2007

l. Prosecutor General Washington Pesántez's Notice Reopening the Investigation for Falsification of Public Documents based on New Evidence issued on March 31, 2008

m. Prosecutor General Washington Pesántez's Notice Ordering the Initiation of the Prosecutorial Investigation issued on August 26, 2008

n. Judge Roberto Gómez Mera's Order Noticing the Initiation of the Prosecutorial Investigation issued on September 19, 2008 in the Supreme Court of Justice

o.   Prosecutor General Alfredo Alvear Enríquez's Order Adding New Sites to Investigation issued on May 13, 2009

p.   Environmental Engineer William Bedón's Expert Report Site Inspection filed with the Prosecutor General's Office on August 25, 2009

q.   Prosecutor General Alfredo Alvear Enríquez's Accusation Opinion of Rodrigo Pérez and Ricardo Veiga issued on April 29, 2010

6.   The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

7.   The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

8.   The term "IDENTIFY," when used in reference to:

a.   A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

b.   A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

4

    c.  A DOCUMENT shall mean to state the date thereof and to identify the writer or

originator of the DOCUMENT, any persons to whom it was sent, the subject

matter dealt with in the DOCUMENT, the present location thereof, and the

name(s) of the custodian(s) thereof.

9.     As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de

la Amazonia, including FDA's members, partners, contractors, employees, servants,

representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or

any other person or entity acting, or purporting to act, on FDA's behalf, either directly or

indirectly, including without limitation AmazonWatch, OilWatch and Accion Ecologica.

10.    The phrase SELVA VIVA shall mean the corporation legally established in

Ecuador in September 2004 as Selva Viva Selviva Cia Ltda, which is affiliated with FDA and

recently declared inactive by Ecuador's Superintendent of Companies.

11.    The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of

*Maria Aguinda y Otros v. Chevron Corporation*, currently pending in the Provincial Court of

Justice of Sucumbíos in Ecuador.

12.    The phrase "AGUINDA LITIGATION" shall mean and refer to the case of *Maria*

*Aguinda et al. v. Texaco Inc.*, No. 93cv7527 (S.D.N.Y.).

13.    The phrase "CALMBACHER" shall mean and refer to Dr. Charles W.

Calmbacher and any PERSON assisting him in the LAGO AGRIO LITIGATION, including but

not limited to David Russell.

14.    The phrase "CALMBACHER REPORTS" shall mean and refer to the expert

reports filed under CALMBACHER's name in the LAGO AGRIO LITIGATION, and any un-

filed reports or site inspection performed by, drafted by or attributed to CALMBACHER.

15.    The phrase "GOVERNMENT OF ECUADOR" shall mean any representative, employee, contractor, servant, or any other person or entity, including but not limited to Ecuador's Deputy Attorney General, Martha Escobar, acting, or purporting to act, on behalf, either directly or indirectly, of a governmental body in Ecuador.

16.    The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

17.    The Phrase "PLAINTIFF EXPERT(S)" shall mean any PERSON contacted, consulted or retained by the Lago Agrio Plaintiffs or any PLAINTIFF AFFILIATED PERSON to perform WORK RELATING TO the LAGO AGRIO LITIGATION for actual or potential submission to the court in connection with any report or other communication to the court by or in the name of any court-appointed expert, including but not limited to the following PLAINTIFF EXPERTS and the corresponding Judicial Inspection sites:

| | |
|---|---|
| Jennifer Bilbao Garcia | SA-006/SA-021 |
| Charles William Calmbacher | SA-006/SA-021/SA-094/SSF-048 |
| Edison Camino Castro | SA-010/SA-013/SA-051/SA-053/SA-057 |
| Oscar Miguel Davila Benitez | SSF-Suroeste/SSF-Sur/SSF-Norte/SA-014/SA-065 |
| Orlando Manuel Felicita Nato | SA-Sur |
| Xavier Alonso Grandes Zambonino | LA-Norte/SSF-08/SSF-67 |
| Jose Robalino Hidalgo | SA-018/SA-085/SA-Central/SSF-04/SSF-13/LA-02/LA-06/LA-11A/LA-15/SA-Norte 1 |
| Amaury Mauricio Suarez Rivera | SSF-45A/SSF-38 |
| Luis Alberto Villacreces Carvajal | SSF-18/SSF-24/SSF-25/SSF-27/AG Station/LA-Central/GU-06/GU-07/YU-02/AU-01/CO-06 |

Francisco Viteri Santamaria      SSF-07/SSF-21/SSF-Central

Fabian Alberto Mora Orozco     SSF-25

18.     The phrase "PLAINTIFF AFFILIATED PERSON" shall mean and refer to any PERSON directly or indirectly assisting plaintiffs in the LAGO AGRIO LITIGATION including without limitation YOU, the FDA, and SELVA VIVA.

19.     The phrase "YOU" or "YOUR" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your agents, servants, and representatives, including attorneys, accountants, investigators, advisors, environmental consultants, contractors, and medical consultants.

20.     The phrase SETTLEMENT AND RELEASE AGREEMENTS shall mean the following agreements and the performance of any legal obligation or scope of work contained therein:

         a.   Memorandum of Understanding between The Government of Ecuador, Petroecuador and Texaco Petroleum Company, Dec. 14, 1994;

         b.   Contract for Implementing of Environmental Work and Release From Obligations, Liability and Claims between the Republic, Petroecuador and TexPet, May 4, 1995;

         c.   Final Act and Release, Sept. 30, 1998.

21.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

22.    The term "including" is used without limitation to items or topics not specifically listed.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1.    In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege log as follows: author(s), addressees(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the nature of the privilege asserted.

2.    In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of the DOCUMENT and identify its last known location and the reason it is no longer in existence.

3.    In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

4.    In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT.

5.    At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as maintained in the ordinary course of business.

6.    For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

7.    For each DOCUMENT produced, identify the office and location where that DOCUMENT was kept prior to this proceeding.

8.    As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

DOCUMENTS TO BE PRODUCED BY YOU

1.    Full and complete copies of all versions of the CALMBACHER REPORTS, including without limitation all exhibits, annexes, attachments, full or partial drafts, whether or not reviewed by CALMBACHER.

2.    All COMMUNICATIONS and DOCUMENTS RELATING TO COMMUNICATIONS involving CALMBACHER, and all WORK, DOCUMENTS and COMMUNICATIONS RELATING TO the CALMBACHER REPORTS, whether or not reviewed or relied upon by CALMBACHER.

3.    Full and complete copies of all versions of WORK prepared by or on behalf of any PLAINTIFF EXPERT in the LAGO AGRIO LITIGATION, including all exhibits, annexes, attachments, and full or partial drafts, whether or not reviewed or relied upon by said experts.

4.    All COMMUNICATIONS and DOCUMENTS RELATING TO COMMUNICATIONS between any PLAINTIFF AFFILIATED PERSON and any PLAINTIFF EXPERT RELATING TO the WORK referenced in number 3, above.

9

5.      To the extent not covered by number 3 or number 4, above, all DOCUMENTS and COMMUNICATIONS RELATED TO any factual representations, analyses or conclusions in the WORK referenced in number 3, above.

6.      All DOCUMENTS and COMMUNICATIONS relating to the formation, organization or activities of SELVA VIVA.

7.      All DOCUMENTS and COMMUNICATIONS RELATING TO the CRIMINAL INVESTIGATION(S) or CRIMINAL PROCEEDING(S).

8.      All COMMUNICATIONS and DOCUMENTS RELATING TO COMMUNICATIONS between PLAINTIFF AFFILIATED PERSONS and the GOVERNMENT OF ECUADOR RELATING TO the SETTLEMENT AND RELEASE AGREEMENTS, the LAGO AGRIO LITIGATION, or the AGUINDA LITIGATION.

## EXHIBIT B

### EXAMINATION TOPICS

### DEFINITIONS

1.      "And" includes the word "or" and vice-versa.

2.      "Any" includes the word "all" and vice-versa.

3.      As used herein, the terms "DOCUMENT" or "DOCUMENTS" shall mean all COMMUNICATIONS in a tangible form, however produced, reproduced, or stored on any electronic media, and shall include, but shall not be limited to, the following: all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, papers, indices, letters, envelopes, telegrams, cables, telex messages, tabulations, work papers, timesheets, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals, notes or summaries of telephone conversations or messages or other COMMUNICATIONS of any type, video recording, photographs, tape or other recordings, punch cards, discs, data cells, drums, printouts, and other data compilations from which information can be obtained, electronically-stored information, correspondence, teletype messages, electronic mail, instant messages, internal memoranda, agreements, diary entries, minute books, financial records, accounting records, income tax returns, ledgers, journals, audits, receipts, canceled checks, check stubs, drafts and other written, deeds, leases, mortgages, assignments, insurance policies, or other instruments related to real or personal property printed or typed matter, diagrams, plans, pictures, travel, entertainment, or expense records or reports or any other tangible thing that constitutes matter. The term "DOCUMENT" and "DOCUMENTS" shall also mean originals and exact copies or reproductions of all such written, printed, typed, recorded or graphic material or matter

upon which notations or markings in writing, print or otherwise have been made which do not appear in the originals.

    4.      The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

    5.      The phrase "CRIMINAL INVESTIGATION(S)" or "CRIMINAL PROCEEDING(S)" shall refer to all investigations or other proceedings RELATED TO actual or potential criminal accusations or charges RELATING TO the SETTLEMENT AND RELEASE AGREEMENTS, the LAGO AGRIO LITIGATION, THE AGUINDA LITIGATION or the factual allegations therein. This definition includes without limitation all investigations or other proceedings RELATED TO the following documents:

        a.  Comptroller General of Ecuador Genaro Peña Ugalde's Criminal Complaint filed with the Prosecutor General of Ecuador on October 29, 2003

        b.  Prosecutor General Mariana Yépez Andrade's Order Initiating the Preliminary Investigation for Environmental Crimes and Fraud issued on May 10, 2004

        c.  Prosecutor General of Ecuador Cecelia Armas's Motion to Dismiss the Fraud Charges filed in the Criminal Division of the Supreme Court of Ecuador on August 9, 2006

        d.  Public Prosecutor of Pichincha Marianita Vega Carrera's Motion to Dismiss the Environmental Crimes Charges filed in the Third Criminal Court of Napo on September 4, 2006

e.  Order Requesting Comptroller General's Opinion on Prosecutor General Armas's
Motion to Dismiss the Fraud Charges issued by the Supreme Court of Justice on
October 27, 2006

f.  Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in
Supreme Court of Justice on March 1, 2007

g.  Comptroller General Carlos Polít Faggioni's Motion Requesting that the Criminal
Case Remain Open filed in the Supreme Court of Justice on May 18, 2007

h.  Order Requiring Prosecutor General to Reissue Opinion issued by Supreme Court
of Justice on June 11, 2007

i.  Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in
Supreme Court of Justice on June 14, 2007

j.  District Prosecutor Washington Pesántez's Opinion Affirming the Motion to
Dismiss the Environmental Crimes Charges (March 13, 2007)

k.  Order Dismissing the Environmental Crimes Charges issued by the Third
Criminal Court of Napo on March 16, 2007

l.  Prosecutor General Washington Pesántez's Notice Reopening the Investigation
for Falsification of Public Documents based on New Evidence issued on March
31, 2008

m.  Prosecutor General Washington Pesántez's Notice Ordering the Initiation of the
Prosecutorial Investigation issued on August 26, 2008

n.  Judge Roberto Gómez Mera's Order Noticing the Initiation of the Prosecutorial
Investigation issued on September 19, 2008 in the Supreme Court of Justice

o. Prosecutor General Alfredo Alvear Enríquez's Order Adding New Sites to Investigation issued on May 13, 2009

p. Environmental Engineer William Bedón's Expert Report Site Inspection filed with the Prosecutor General's Office on August 25, 2009

q. Prosecutor General Alfredo Alvear Enríquez's Accusation Opinion of Rodrigo Pérez and Ricardo Veiga issued on April 29, 2010

6.      The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

7.      The term "PERSON" shall mean any individual, corporation, organization, association, partnership, enterprise, limited partnership, limited liability company, firm, joint venture, trustee, governmental body, agency, governing board, department or division, or any other entity.

8.      The term "IDENTIFY," when used in reference to:

a. A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

b. A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

4

c.  A DOCUMENT shall mean to state the date thereof and to identify the writer or
originator of the DOCUMENT, any persons to whom it was sent, the subject
matter dealt with in the DOCUMENT, the present location thereof, and the
name(s) of the custodian(s) thereof.

9.  As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de
la Amazonía, including FDA's members, partners, contractors, employees, servants,
representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or
any other person or entity acting, or purporting to act, on FDA's behalf, either directly or
indirectly, including without limitation AmazonWatch, OilWatch and Accion Ecologica

10.  The phrase SELVA VIVA shall mean the corporation legally established in
Ecuador in September 2004 as Selva Viva Selviva Cia Ltda, which is affiliated with FDA and
recently declared inactive by Ecuador's Superintendent of Companies.

11.  The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of
*Maria Aguinda y Otros v. Chevron Corporation*, currently pending in the Provincial Court of
Justice of Sucumbíos in Ecuador.

12.  The phrase "AGUINDA LITIGATION" shall mean and refer to the case of *Maria
Aguinda et al. v. Texaco Inc.*, No. 93cv7527 (S.D.N.Y.).

13.  The phrase "CALMBACHER" shall mean and refer to Dr. Charles W.
Calmbacher and any PERSON assisting him in the LAGO AGRIO LITIGATION, including but
not limited to David Russell.

14.  The phrase "CALMBACHER REPORTS" shall mean and refer to the expert
reports filed under CALMBACHER's name in the LAGO AGRIO LITIGATION, and any un-
filed reports or site inspection performed by, drafted by or attributed to CALMBACHER.

15.     The phrase "GOVERNMENT OF ECUADOR" shall mean any representative, employee, contractor, servant, or any other person or entity, including but not limited to Ecuador's Deputy Attorney General, Martha Escobar, acting, or purporting to act, on behalf, either directly or indirectly, of a governmental body in Ecuador.

16.     The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

17.     The phrase "PLAINTIFF EXPERT(S)" shall mean any PERSON contacted, consulted or retained by the Lago Agrio Plaintiffs or any PLAINTIFF AFFILIATED PERSON to perform WORK RELATING TO the LAGO AGRIO LITIGATION for actual or potential submission to the court in connection with any report or other communication to the court by or in the name of any court-appointed expert, including but not limited to the following PLAINTIFF EXPERTS and the corresponding Judicial Inspection sites:

| | |
|---|---|
| Jennifer Bilbao Garcia | SA-006/SA-021 |
| Charles William Calmbacher | SA-006/SA-021/SA-094/SSF-048 |
| Edison Camino Castro | SA-010/SA-013/SA-051/SA-053/SA-057 |
| Oscar Miguel Davila Benitez | SSF-Suroeste/SSF-Sur/SSF-Norte/SA-014/SA-065 |
| Orlando Manuel Felicita Nato | SA-Sur |
| Xavier Alonso Grandes Zambonino | LA-Norte/SSF-08/SSF-67 |
| Jose Robalino Hidalgo | SA-018/SA-085/SA-Central/SSF-04/SSF-13/LA-02/LA-06/LA-11A/LA-15/SA-Norte 1 |
| Amaury Mauricio Suarez Rivera | SSF-45A/SSF-38 |
| Luis Alberto Villacreces Carvajal | SSF-18/SSf-24/SSF-25/SSF-27/AG Station/LA-Central/GU-06/GU-07/YU-02/AU-01/CO-06 |

Francisco Viteri Santamaria          SSF-07/SSF-21/SSF-Central

Fabian Alberto Mora Orozco          SSF-25

18.     The phrase "PLAINTIFF AFFILIATED PERSON" shall mean and refer to any
PERSON directly or indirectly assisting plaintiffs in the LAGO AGRIO LITIGATION including
without limitation YOU, the FDA, and SELVA VIVA.

19.     The phrase "YOU" or "YOUR" shall mean and includes yourself and all persons
acting in your interest or on your instructions or assisting you, including without limitation your
agents, servants, and representatives, including attorneys, accountants, investigators, advisors,
environmental consultants, contractors, and medical consultants.

20.     The phrase SETTLEMENT AND RELEASE AGREEMENTS shall mean the
following agreements and the performance of any legal obligation or scope of work contained
therein:

> a. Memorandum of Understanding between The Government of Ecuador,
> Petroecuador and Texaco Petroleum Company, Dec. 14, 1994;
>
> b. Contract for Implementing of Environmental Work and Release From
> Obligations, Liability and Claims between the Republic, Petroecuador and
> TexPet, May 4, 1995;
>
> c. Final Act and Release, Sept. 30, 1998.

21.     As used herein, the singular form of a word shall be interpreted to include the
plural form and the plural form shall be interpreted to include the singular whenever appropriate
in order to bring within the scope of this request any DOCUMENTS which might otherwise be
considered to be beyond its scope.

22.     The term "including" is used without limitation to items or topics not specifically listed.

TOPICS FOR EXAMINATION

1.      The preparation and filing of the CALMBACHER REPORTS, including any exhibits, annexes or attachments thereto.

2.      COMMUNICATIONS with CALMBACHER RELATING TO his WORK with respect to THE LAGO AGRIO LITIGATION.

3.      The preparation of any PLAINTIFF EXPERT's WORK RELATING TO THE LAGO AGRIO LITIGATION, including any exhibits, annexes or attachments thereto.

4.      COMMUNICATIONS between any PLAINTIFF AFFILIATED PERSON and any PLAINTIFF EXPERT RELATING TO the WORK referenced in number 3, above.

5.      COMMUNICATIONS RELATED TO any factual representations, analyses or conclusions in the WORK referenced in number 3, above.

6.      COMMUNICATIONS relating to the formation, organization or activities of SELVA VIVA.

7.      COMMUNICATIONS RELATING TO the CRIMINAL INVESTIGATION(S) or CRIMINAL PROCEEDING(S).

8.      COMMUNICATIONS between PLAINTIFF AFFILIATED PERSONS and the GOVERNMENT OF ECUADOR RELATING TO the SETTLEMENT AND RELEASE AGREEMENTS, the LAGO AGRIO LITIGATION, or the AGUINDA LITIGATION.