**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In re Application of

RICARDO REIS VEIGA, and

RODRIGO PÉREZ PALLARES,

              Applicants,

To Issue a Subpoena for the Taking of a
Deposition and the Production of Documents
for Use in a Foreign Proceeding.

Misc. Action No. 10-370 (CKK) (DAR)

In re Application of

CHEVRON CORPORATION,

              Applicant,

To Issue a Subpoena for the Taking of a
Deposition and the Production of
Documents.

Misc. Action No. 10-371 (CKK) (DAR)

**MEMORANDUM OPINION**
(November 3, 2010)

      Presently before the Court is the Joint Motion by Chevron Corporation ("Chevron") and

two of its attorneys, Rodrigo Pérez Pallares ("Pérez") and Ricardo Reis Veiga ("Veiga")

(collectively, "Applicants"), to Compel Discovery from Respondent Alberto Wray

("Respondent"). *See* Applicants' Joint Mot. to Compel Disc. from Alberto Wray and Mot. for

Expedited Consideration ("Mot. to Compel."), Docket No. [66].[1]  For the reasons set forth below,

---

[1]  Unless otherwise indicated, references to entries on the public docket are to *In re Application of Veiga*, No. 10 Misc. 370 (D.D.C.) (CKK) (DAR).  For purposes of economy, the Court will omit parallel citations for duplicative documents filed in *In re Application of Chevron Corp.*, No. 10 Misc. 371 (D.D.C.) (CKK) (DAR).

the Court shall GRANT Applicant's Motion to Compel, subject to certain conditions and limitations.

## I. BACKGROUND[2]

Pursuant to 28 U.S.C. § 1782(a), this Court previously granted two applications – one by Pérez and Veiga and a second by Chevron – for the issuance of subpoenas requiring Respondent to produce documents and appear at a deposition in Washington, D.C. on or before November 3, 2010. *See* Order (Oct. 20, 2010) (Pérez-Veiga Application), Docket No. [60]; Order (Oct. 20, 2010) (Chevron Application), No. 10 Misc. 371, Docket No. [69]. In the course of litigating the merits of those applications, the Republic of Ecuador (the "Republic") and the plaintiffs in an ongoing litigation against Chevron in Lago Agrio, Ecuador (the "Lago Agrio Plaintiffs") intervened as interested parties (collectively, the "Interested Parties").

Applicants claim to have served subpoenas consistent with this Court's prior orders upon Respondent on Thursday, October 21, 2010 and Friday, October 22, 2010 – *i.e.*, the two days following the Court's rulings – requesting the production of responsive documents on or before Tuesday, October 26, 2010, and noticing Respondent's deposition to begin on November 2, 2010. *See* Mot. to Compel at 1. Respondent does not dispute that he has been properly served. Rather, Respondent's counsel claims to have commenced reviewing potentially responsive documents and preparing a privilege log after returning from out of town on the afternoon of Monday, October 25, 2010. *See* Resp't Alberto Wray's Opp'n to the Applicants' Joint Mot. to

---

[2] The court assumes familiarity with its prior opinion in this action, which sets forth in detail the factual and procedural background of this case, *see In re Application of Veiga*, __ F. Supp. 2d __, 2010 WL 4225564 (D.D.C. Oct. 20, 2010), and shall therefore only address the factual and procedural background necessary to address the discrete issues currently before the Court.

Compel ("Resp't Opp'n"), Docket No. [69], at 2. Meanwhile, Respondent avers – and Applicants do not dispute – that the parties were simultaneously engaging in an ongoing dialogue with respect to both the anticipated timing of Respondent's production and his assertion of certain privileges as a basis for withholding documents. *See* Resp't Opp'n at 2.

On Wednesday, October 27, 2010, Respondent produced a relatively small number of documents along with the first iteration of a privilege log identifying 372 documents withheld on the basis of both foreign and United States privileges. *See* Mot. to Compel at 1-2; Sixth Suppl. Fisher Decl., Ex. 110 (Oct. 27, 2010 Privilege Log), Docket No. [66-4]. During a meet-and-confer session held on October 28, 2010, Applicants apparently expressed their dissatisfaction with the first iteration of Respondent's privilege log and Respondent's broad claims of privilege. *See* Resp't Opp'n at 2. The following day, Friday, October 29, 2010, Applicants filed the present Motion to Compel.

Notably, Respondent's deposition was scheduled to commence the following Tuesday, on November 2, 2010. Moreover, Pérez and Veiga were scheduled to appear in Quito, Ecuador for a preliminary hearing in the criminal proceedings brought against them little more than a week thereafter, on November 10, 2010, at which they may seek to introduce or discuss the purportedly exculpatory evidence sought through this action. *See* Not. that Prelim. Hr'g Against Applicants Is Set for November 10, 2010 in Quito, Ecuador, Docket No. [59].[3] In light of these circumstances, the same day it received Applicants' Motion to Compel, the Court issued a Minute Order establishing an expedited briefing schedule. *See* Min. Order (Oct. 29, 2010). In so

---

[3] Chevron also claims to need the requested discovery to prepare for a November 6, 2010 briefing deadline in the related BIT Arbitration, *see* Mot. to Compel. at 2, commenced in 2009 under the Bilateral Investment Treaty between the United States and Ecuador.

doing, the Court also set forth certain parameters for the parties' briefing, only some of which merit mentioning here. First, Respondent was expressly directed to "correlate any claimed privilege(s) with specific documents . . . and articulate with particularity the basis for invoking the claimed privilege." *Id.* Second, the parties were directed to "raise any and all arguments they want[ed] the Court to consider in their [responsive] papers," and were warned that the Court would "not hunt down arguments or authorities referenced in other papers." *Id.*

Shortly after the issuance of the Court's Minute Order, Respondent produced a revised privilege log, the contents of which the Court has not seen. *See* Resp't Opp'n at 3 and Ex. 2 (Oct. 29, 2010 E-mail from W. Coffield to L. Fisher *et al.*), Docket No. [69-2]. Two days later, on Sunday, October 31, 2010, Respondent produced a third and final iteration of his privilege log (the "Privilege Log"), identifying a total of 447 documents withheld on the basis of both foreign and United States privileges, accompanied by an unsworn letter from Respondent's counsel briefly identifying the individuals whose names appear on the privilege log (the "Cover Letter"), and asking that the Cover letter be incorporated into the Privilege Log. *See* Resp't Opp'n Ex. 3 (Oct. 31, 2010 Ltr. from W. Coffield to T. Cubbage, III *et al.* and Oct. 31, 2010 Privilege Log), Docket No. [69-3].[4]

Consistent with the Court's briefing schedule, Respondent filed his opposition to Applicants' Motion to Compel the morning of November 1, 2010. *See* Resp't Opp'n. The Lago Agrio Plaintiffs and the Republic, for their part, filed separate oppositions that same morning. *See* Interested Parties Ecuadorian Plaintiffs' Opp'n to Applicants' Joint Mot. to Compel ("Lago

---

[4] Respondent's final Privilege Log departs in several material respects from the previous iteration reviewed by the Court, both in terms of the content of the descriptions of communications and the privileges claimed.

Agrio Pls.' Opp'n"), Docket No. [67]; Republic of Ecuador's Opp'n to Applicants' Joint Mot. to

Compel Disc. from Alberto Wray ("Republic's Opp'n"), Docket No. [68]. Later that afternoon,

Applicants filed a timely reply. *See* Applicants' Reply in Supp. of Their Joint Mot. to Compel

Disc. from Alberto Wray ("Applicants' Reply"), Docket No. [70]. Upon reviewing the parties'

papers, Respondent's counsel was contacted by telephone and asked to forward to the Court four

documents – namely, Documents 397-400 on Respondent's Privilege Log. *See* Min. Entry (Nov.

1, 2010). Those documents were provided to the Court for *ex parte*, *in camera* review. *Id.*

 The Court has considered the parties' respective papers, including the attachments and

exhibits thereto, and expresses its gratitude to the parties for their prompt filings. The motion is

now fully briefed and ripe for adjudication, and the Court now turns to the merits of the present

motion, which it has considered on an expedited basis and on the record created by the parties.

## II.  LEGAL STANDARD

 Even if discovery is permissible under 28 U.S.C. § 1782(a),[5] an applicant may not seek

information that is immune from discovery. Indeed, the statute expressly cautions that "[a]

person may not be compelled to give his testimony or statement or to produce a document or

other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a).

---

[5] In granting the applications at issue, the Court necessarily concluded that the discovery
sought was permissible. *See In re Application of Veiga*, __ F. Supp. 2d __, 2010 WL 4225564
(D.D.C. Oct. 20, 2010). Quite rightly, the parties have not revisited this issue on the present
motion, which is limited to the propriety of certain assertions of privilege. The Court only
pauses to observe that it is not immediately apparent from the Privilege Log, or from the four
documents submitted for *in camera* review, why certain documents would be responsive to the
eight topics for which discovery was allowed. The Court, however, expresses no view on the
responsiveness of certain documents or categories of documents, an issue that has not been raised
by the parties on this motion; that issue is one more properly resolved among the parties
themselves.

As a threshold matter, the Court must address the applicable legal framework. Because the jurisdictional basis for this action rests on a federal statute, federal common law governs any assertions of privilege. *See In re Federacion Internationale de Basketball*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000); *accord In re Application of Christensen*, 2006 WL 278169, at *1 (S.D.N.Y Feb. 3, 2006). Nevertheless, separate and apart from whatever privileges may be available under the federal common law, courts have concluded – and this Court agrees – that the protections afforded by § 1782(a) also extend to privileges recognized by foreign law, albeit only in certain narrow and circumscribed circumstances, as described more fully below. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010). In this case, three separate privileges have been claimed with respect to the withheld documents: (a) a foreign privilege premised upon Article 335 of the Ecuadorian Code of Judicial Function; (b) the federal attorney-client privilege; and (c) the federal attorney work product privilege.[6] Although the Court shall address each of these in greater specificity elsewhere, the Court sets out the general principles governing the assertion of these privileges in the context of the present action.

A.    *Assertions of Foreign Privileges within a Section 1782(a) Proceeding*

Although the protections afforded by § 1782(a) may extend to privileges recognized by foreign law, consonant with courts' reticence to delve into complex questions of foreign law, parties are generally required to provide clear and authoritative proof that a foreign tribunal would reject evidence pursuant to a foreign privilege before the court will invoke the privilege to

---

[6] The Republic asserts privilege only over Documents 329, 330, 364-367, and 397-400, and invokes some combination of all three privileges with respect to each of those communications. *See* Republic's Opp'n at 2 n.2. The Lago Agrio Plaintiffs assert privilege over all documents except 364-367 and 397-400, and invoke Article 335 and the work product privilege in support.

bar discovery.  *Ecuadorian Plaintiffs*, 619 F.3d at 378; *accord In re Request for Judicial Assistance from the City Court of Jönköping, Sweden*, 1997 WL 1052017, at *3 (D. Conn. Oct. 10, 1997).  This well-reasoned standard is designed "to avoid speculative forays into legal territories unfamiliar to federal judges."  *Ecuadorian Plaintiffs*, 619 F.3d at 378; *see also Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at *5 (D. Colo. Oct. 1, 2010) ("This Court is in no position to presume applying the law of a foreign jurisdiction . . . and principles of comity between sovereign entities require such philosophy."); *cf. In re Exxon Valdez*, 142 F.R.D. 380, 384-85 (D.D.C. 1992) (enforcing subpoena but deferring to tribunal in parallel state and federal actions to determine propriety of assertions of privilege).  Although perhaps cautious, this approach recognizes the limited scope of § 1782(a) proceedings, and furthers the statute's twin aims of providing fair and efficient assistance to participants in international litigation and encouraging other countries to provide similar assistance.  *See In re Application of Euromepa S.A.*, 51 F.3d 1095, 1097 (2d Cir. 1995).

B.     *Assertions of Privileges under United States Law*

Under the federal common law, the proponent bears the burden of demonstrating the applicability of any asserted privilege.  *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980).  The nature of that burden is clear: the proponent must establish the claimed privilege with "reasonably certainty."  *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750-51 (D.C. Cir. 2006); *accord Amobi v. D.C. Dep't of Corrections*, 262 F.R.D. 45, 51 (D.D.C. 2005).  That showing must extend to "each of the essential elements necessary to support a claim of privilege."  *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000).  Nor may the proponent assert blanket or

categorical claims of privilege; rather, the law "requires a showing that the privilege applies to each communication for which it is asserted." *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1082 (D.C. Cir. 2001).

In discharging its burden, the proponent must adduce competent evidence in support of its claims. *Alexander*, 192 F.R.D. at 45; *see also In re Application of Chevron Corp.*, 2010 WL 2038826, at *4 (S.D. Tex. May 20, 2010), *aff'd*, 619 F.3d 373, 378 (5th Cir. 2010). Consistent with these strictures, the proponent of the privilege must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel. *See Alexander*, 192 F.R.D. at 45; *Stratus Consulting*, 2010 WL 3923092, at *8. Where the proponent fails to adduce sufficient facts to permit the court to conclude with reasonable certainty that the privilege applies, its burden is not met. *TRW, Inc.*, 628 F.2d at 213. With these principles in mind, the Court address the contours of the two federal common law privileges asserted here.

1.     The Attorney-Client Privilege

In order to demonstrate the applicability of the attorney-client privilege, the proponent must establish each of the following essential elements:

(1)     The holder of the privilege is, or sought to be, a client;

(2)     The person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer;

(3)     The communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and

(4)     The privilege has been claimed by the client.

*Elkins v. District of Columbia*, 250 F.R.D. 20, 24 (D.D.C. 2008) (citing *In re Sealed Case*, 737

F.2d 94, 98-99 (D.C. Cir. 1984)).  Likewise, that the communications contain confidential information and have been maintained in confidence are prerequisites to the recognition of the privilege.  *Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002).

Because it inhibits the truth-finding process, the attorney-client privilege has generally been narrowly construed.  *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981).  It has been said that, "[a]lthough the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived."  *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).  Consistent with this logic, it is axiomatic that the voluntary disclosure of an otherwise privileged communication generally vitiates the privilege.  *Elkins*, 250 F.R.D. at 24.  Courts "will grant no greater protection to those who assert the privilege than their own precautions warrant," *Sealed Case*, 877 F.2d at 980, and the proponent cannot be heard to "invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit," *Permian Corp.*, 665 F.2d at 1221.

2.    The Work Product Privilege

The attorney work product privilege, as codified in the Federal Rules of Civil Procedure, protects documents and materials "that are prepared in anticipation of litigation or for trial by or for [a] party or its representative" – a class that includes a party's attorney, consultant, or agent. Fed. R. Civ. P. 26(b)(3)(A).  In assessing whether the proponent has carried its burden, the relevant inquiry is as follows: "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Equal Emp't Opportunity Comm'n v. Lutheran Social*

*Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (internal quotation marks omitted). The inquiry contains two related, but nevertheless distinct concepts – one a question of timing and the other a question of intent. *U.S. v. ex rel. Fago v. M & T Mortg. Corp.*, 242 F.R.D. 16, 18 (D.D.C. 2007). The former, the temporal element, is not at issue here because the relevant foreign proceedings had either already commenced or were within reasonable anticipation at the time the disputed documents were created. The latter, the motivational element, demands that the document at issue be prepared or obtained *because of* the prospect of litigation. *Id.* In this respect, the proponent bears the burden of "showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and not some other reason." *Alexander*, 192 F.R.D. at 46.

The work product privilege is qualified, not absolute. *Elkins*, 250 F.R.D. at 26. As with the attorney-client privilege, voluntary disclosure may waive its protections. However, due to their distinct functions, courts employ a slightly different inquiry when asking whether the work product privilege has been forfeited by virtue of voluntary disclosure. *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010). In this context, voluntary disclosure to a third party constitutes a waiver where the disclosure is made under circumstances inconsistent with the maintenance of secrecy from one's adversary. *Id.* Pursuant to this so-called "maintenance of secrecy" standard, courts inquire whether the proponent "had a reasonable basis for believing that the recipient would keep the disclosed material confidential." *Id.* at 141.

Even where the proponent has established the applicability of the work product privilege, and that privilege has not otherwise been waived, that is not the end of the inquiry. Of the two types of work product – "fact" work product and "opinion" work product – the requesting party

may discover the former upon "show[ing] that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Opinion work product, however, is "virtually undiscoverable." *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997). To support the discovery of opinion work product, "a party must show 'extraordinary justification.'" *In re HealthSouth Corp. Secs. Litig.*, 250 F.R.D. 8, 10 (D.D.C. 2008) (quoting *In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir. 1982)). Absent such a showing, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

## III. DISCUSSION

In the course of briefing the present motion, the parties addressed several general categories of information identified on Respondent's Privilege Log. With limited departures, the Court shall preserve those categories in addressing the merits of the present motion. However, before proceeding, two qualifications are in order. First, where possible, the Court has attempted to specifically identify documents by the number listed on Respondent's Privilege Log. For various reasons (*e.g.*, omissions in the Privilege Log, supplemental productions, etc.), documents not specifically identified may very well fall within the categories described; in that event, such documents should be treated consistently with the Court's analysis here. Second, the Court is aware that the categories employed are, to a large extent, overlapping, and particular documents may fall within the metes and bounds of multiple categories. Nevertheless, so long as there is one basis for production for a given document, that document must be produced.

*A.      Article 335 Documents*

Respondent claims that Article 335 of the Ecuadorian Code of Judicial Function –

specifically, subsection (1) – shields all 447 documents from production.  In full, that provision

provides as follows:

> **Art. 335. – Prohibitions to attorneys in representing cases**. –
> Attorneys are forbidden when representing [clients'] cases:
>
> 1.      To reveal the secrets of their clients, their documents or instructions;
>
> 2.      To abandon, without just cause, the actions they represent;
>
> 3.      To assure their clients they will prevail in the trial;
>
> 4.      To defend one party after having defended the other [party] in related cases;
>
> 5.      To authorize with their signature pleadings or drafts made by another person;
>
> 6.      To be counsel in those cases over which [they] have presided as judge or substitute judge.  To this end, the trial and pretrial proceedings are deemed as a unit;
>
> 7.      To intervene in cases when this causes the recusal of the judge or substitute judge;
>
> 8.      To meet with the Judge to discuss matters related to the case being defended without previously and timely notifying the other party or its attorney so that he/she can be present if he/she so desires;
>
> 9.      To abusively, maliciously or recklessly exercise the right to bring an action or argue in trial, to violate the principle of good faith and loyalty through practices such as the filing of altered evidence, use of trickery and use bad faith stall tactics to unduly delay the progress of the trial; and

10.     The other prohibitions set forth in this Code.

Seventh Suppl. Fisher Decl., Ex. 111 (Article 335, Certified English Translation), No. 10 Misc. 371, Docket No. [76-2].[7]  Respondent and the Interested Parties construe Article 335(1) as an absolute prohibition on the production of documents, irrespective of their source, so long as the attorney received those documents in connection with or as a result of his or her representation. *See* Resp't Opp'n at 4.

On its face, Article 335(1) does not support such a breathtakingly broad construction. Indeed, the provision appears to be the Ecuadorian counterpart to Rule 1.6 of the D.C. Rules of Professional Conduct.  That rule, which governs the confidentiality of information obtained in the course of an attorney-client relationship, prohibits attorneys from, *inter alia,* knowingly "reveal[ing] a confidence or secret of the lawyer's client."  D.C. Rules of Prof'l Conduct, Rule 1.6(a).  It is, in other words, an ethical obligation, and the D.C. Circuit Court of Appeals has expressed its doubts that an "exclusionary remedy" would apply to evidence obtained in violation of its terms.  *See In re Grand Jury*, 475 F.3d 1299, 1306 (D.C. Cir. 2007).  The Court sees no reason to afford Article 335(1) a different construction, a conclusion bolstered by the fact that Article 335(1)'s succeeding subsections all appear to relate to the ethical obligations attaching to the attorney function and not to evidentiary rules and standards.

---

[7]  In opposition to the present motion, Respondent relies upon an unsworn, uncertified, and incomplete translation of Article 335.  According to Respondent's translation, Article 335(1) prohibits attorneys from "[r]eveal[ing] the secrets, documents or instructions from their clients." Resp. Opp'n, Ex. 4 (Oct. 26, 2010 E-mail from W. Coffield to L. Fisher), Docket No. [69-4], at 2.  For purposes of its analysis here, the Court relies upon Applicants' certified and more fulsome translation.  The Court notes that the difference in the two translations, although perhaps not immediately apparent, may very well affect the proper construction.  However, even crediting Respondent's translation, it falls far short of the clear and authoritative proof required to invoke a foreign privilege in the context of a § 1782(a) proceeding.

Given that the plain language of Article 335(1) does not unequivocally support their proffered interpretation, it is unsurprising that Respondent and the Interested Parties all rely upon the declaration of an Ecuadorian attorney and jurist – Hernán Salgado Pesantes ("Salgado"). *See* Resp't Opp'n at 3-5; Republic's Opp'n at 3; Lago Agrio Pls.' Opp'n at 5.[8] However, Salgado's declaration is not even competent evidence, let alone clear and authoritative proof, that Article 335(1) should apply to bar the discovery sought here. Although a party may rely upon an unsworn declaration in support of a given matter, such a declaration must meet certain statutory requirements. Specifically, where the declarant is located outside the United States, his or her declaration must include a statement in substantially the same form as follows:

> I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

28 U.S.C. § 1746; *see also Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 398 (7th Cir. 2002); *Sterling Fifth Assocs. v. Carpentile Corp., Inc.*, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003). Meanwhile, Salgado's declaration, purportedly executed in Ecuador, includes only the following statement:

> I solemnly declare, on my honor and conscience, that what I have stated above is the truth to the best of my knowledge.

Resp't Opp'n, Ex. 5 (Salgado Decl.), Docket No. [69-5], ¶ 9.

---

[8] The Republic also submits a declaration prepared in the course of parallel proceedings in the Southern District of New York. That declaration addresses the underlying merits of the claims made against the Republic, and not the applicability of any foreign privilege. *See* Foreign Law Decl. of Genaro Eguiguren and Ernesto Alban, Docket No. [68-4], ¶¶ 10-17. As expressed in this Court's prior opinion, the merits of the claims and defenses raised in foreign proceedings are matters better left for the foreign tribunals to resolve – the only issue before this Court is the propriety of discovery sought within its jurisdiction.

Simply put, Salgado's unsworn (and unsigned) declaration, provided upon his "honor and conscience," is not substantially the same as the statutorily required language. *See Gotlin v. Lederman*, 616 F. Supp. 2d 376, 389 n.7 (E.D.N.Y. 2009) (declaration that contains "no statement that [the declarant] is subject to perjury for any falsities, no reference to United States law, and no language that conveys that the statement is 'true and correct'" falls short of the statutorily prescribed form). For this reason, Respondent and the Interested Parties cannot rely on the Salgado declaration in support of their claims of privilege, and are therefore left only with the language of Article 335(1) itself, which the Court has already concluded does not unequivocally support the expansive construction suggested.

Even assuming, *arguendo*, the Court could consider Salgado's declaration, the result would be the same for a separate, independent reason – the declaration falls woefully short of the clear and authoritative proof required to justify the assertion of a foreign privilege in the context of a § 1782(a) proceeding. First, Salgado concedes that Article 335(1) is part of a broader set of rules "establish[ing] the attorney's duties and rights," Salgado Decl. ¶ 8.1, a statement that appears to be more in line with the conclusion that the Article speaks to an attorney's ethical obligations and not exclusionary rules of evidence. Second, the declaration itself is internally inconsistent: a mere six paragraphs after declaring that Article 335(1) creates an absolute prohibition on the disclosure of any information obtained in the course of a representation, Salgado cites favorably to authority suggesting that attorneys cannot make "arbitrary use" of, or "disclose without cause," such information. *Id.* ¶ 8.8. If the privilege is in fact absolute, Salgado offers no explanation as to why the reasons for use or disclosure would even be relevant. *Cf. In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (declining to speculate,

based on ambiguous affidavit by respondent's counsel, whether a foreign privilege applied). Finally, and most importantly, Salgado cites to no instance – not one – in which a court or other competent tribunal has endorsed the claimed construction.[9]  As such, the Court is left only with his *ipse dixit*, which of course does not qualify as authoritative proof on its own.  *See Ecuadorian Plaintiffs*, 619 F.3d at 378 ("affidavit from an Ecuadorian attorney suggesting that the discovery sought . . . would not be available in Ecuador" held not to suffice as authoritative proof).[10]

It may very well be that the Ecuadorian courts would afford Article 335 the broad construction pressed by Respondent and the Interested Parties, but there is no indication in the record created by the parties – let alone authoritative proof – that they would do so.  Having failed to carry their burden of proof, Respondent and the Interested Parties cannot lay claim to Article 335(1) as a basis for withholding any of the 447 documents identified on the Privilege Log.  Accordingly, those documents for which Article 335 and no other privilege is claimed as a basis for non-disclosure must be produced.[11]  However, any material produced pursuant to the Court's ruling shall be used by the Applicants solely for purposes of prosecuting the Lago Agrio

---

[9]  Indeed, the only decision referenced by Salgado is his own, apparently made in the course of his responsibilities as a judge on the Inter-American Court for Human Rights, but that decision relates not to Article 335, but to an entirely separate provision under the American Convention on Human Rights.  Salgado Decl. ¶ 8.10.  Moreover, so far as the Court can tell, that decision had more to do with a party's right against self-incrimination than an absolute privilege against disclosure of all information obtained by counsel in the course of a given representation. *See id.*

[10]  Because it concludes that Respondent and the Interested Parties have failed to adduce authoritative proof in support of the claimed privilege, the Court need not resolve whether the countervailing foreign law affidavit submitted by Applicants satisfies the requirements of 28 U.S.C. § 1746.  *See* Seventh Suppl. Fisher Decl., Ex 112, No. 10 Misc. 371, Docket No. [76-3], ¶ 16.

[11]  Documents 29, 120, 292, and 316-319.

Litigation, the BIT Arbitration, and the Criminal Proceedings. The parties shall be required to file with the Court a proposed protective order to this effect, and incorporating any other protections the parties deem desirable.

    B.    *Documents Involving Respondent*

The next category of documents – those where Respondent is either the author[12] or a recipient[13] – unsurprisingly captures the vast majority of documents at issue. It is here where the insufficiency of Respondent's overall showing becomes apparent, and the Court takes this opportunity to address these deficiencies generally before turning to the specific category at hand.

In opposition to the present motion, apart from the vague and non-specific descriptions of documents in the Privilege Log, Respondent offers a perfunctory seven-paragraph declaration, which consists almost exclusively of conclusory and empty invocations of privilege. *See* Resp't

---

[12] Documents 12, 20, 26, 38, 41, 43, 46, 48, 51, 53, 55, 58, 60, 62, 65, 68, 70, 72, 74, 77, 79, 81, 82, 84, 86, 88, 90, 92, 94, 96, 98, 100, 102-103, 106-107, 109, 111, 113-114, 112, 131-133, 137-140, 147-150, 154, 157, 159-160, 176, 178-179, 181, 183-187, 190, 192, 194, 196, 198, 201-202, 204, 206, 209, 211, 213, 215, 217, 219, 221, 223, 226, 232, 236, 250, 252, 254, 256, 259, 261-263, 265, 267-269, 271, 273, 275-276, 278, 280, 282, 284-285, 287, 289, 291, 295, 298, 300, 301, 303, 311-312, 314, 316, 320, 322, 324, 326, 328, 329, 331, 332, 334, 336, 340, 341, 343, 345, 348, 350, 353, 355, 360, 362, 364, 366, 368, 371, 375, 378, 380, 382-383, 386-387, 389-391, 393, 396-397, 399, 402, 406, 408, 409, 411, 413, 416, 420-421, 423, 426, 428, 432, 435, 437, 440, 442, 445, and 447.

[13] Documents 1-11, 13-19, 21-25, 27-31, 33-34, 36-37, 40, 42, 44-45, 47, 49-50, 52, 54, 56-57, 59, 61, 63-64, 66-67, 69, 71, 73, 76, 78, 80, 83, 85, 87, 89, 91, 93, 95, 97, 99, 101, 104-105, 108, 110, 112, 115-121, 123-130, 134-136, 141-143, 145-146, 152-153, 155-156, 158, 162-163, 165-170, 172-175, 177, 180, 182, 188-189, 191, 193, 195, 197, 199-200, 203, 205, 207-208, 210, 212, 214, 216, 218, 220, 225, 227, 229, 230-231, 233-235, 238, 240-249, 251, 253, 255, 257-258, 260, 264, 266, 270, 272, 274, 277, 279, 281, 283, 286, 288, 290, 292-294, 296-297, 299, 302, 304-310, 313, 315, 317, 321, 323, 325, 327, 330, 333, 335, 337-339, 342, 344, 346-347, 349, 351-352, 354, 356-359, 361, 363, 365, 367, 369-370, 372-374, 376-377, 379, 381, 384-385, 388, 392, 394-395, 398, 400-401, 403-405, 407, 410, 412, 414-415, 417-419, 422, 424-425, 427, 429-431, 434, 436, 438-439, 441, 443-444, and 446.

Opp'n, Ex. 6 (Wray Decl.), Docket No. [69-6].  Specifically, for nearly all the documents at

issue, Respondent avers as follows:

> Documents numbered 1-28, 30-119, 121-291, 293-315, 320-447 on
> the revised privilege log are documents that were prepared during
> litigation and include deliberative materials such as mental
> impressions, conclusions, opinions, and legal theories and factual
> materials prepared in anticipation of litigation.  The documents are
> communications prepared by and for counsel, legal staff, retained
> consultants, and retained experts.

*Id.* ¶ 6.  Respondent also states that, "[t]o [his] knowlege, the documents . . . have been

maintained consistent with secrecy against the Applicants in this matter."  *Id.* ¶ 7.  For a handful

of other documents, Respondent declares:

> Documents numbered 364-367 on the revised privilege log are
> documents containing communications between counsel and client,
> with counsel acting in his capacity as a lawyer, relating to facts
> obtained from the client, without the presence of strangers, for the
> purpose of securing either (i) an opinion on law or (ii) legal services
> or (iii) assistance in a legal proceeding, and not for the purpose of
> committing a crime or a tort.

*Id.* ¶ 5.  Coupled with this, Respondent relies upon the two-page Cover Letter prepared by his

counsel identifying certain individuals listed on the Privilege Log in the most bare and

unilluminating fashion.  *See* Resp't Opp'n, Ex. 3 (Cover Letter), Docket No. [69-3], at 1-3.

As described above, Respondent must adduce competent evidence establishing each of

the essential elements necessary to support a claim of privilege for each communication, and he

must do so to a reasonable certainty.  The defects in Respondent's approach are myriad, and the

Court addresses only the most glaring here.

First, in assessing the broad claims to privilege at issue here, resort to Respondent's

Privilege Log is of little assistance, as "the descriptions of the documents are so brief and of such

a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked." *Alexander*, 192 F.R.D. at 45; *see also Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 38 (D.D.C. 2010) (proponents' failure to provide sufficient information to sustain their burden of proof compelled disclosure of documents listed on privilege log). Nor do the hopelessly vague descriptions of individuals in the Cover Letter – *e.g.*, "retained consultant" or "unknown" – aid the Court's determination.[15] Meanwhile, at least some individuals identified on the Privilege Log – *e.g.*, "Meyepez" – are not identified in the Cover Letter at all. Overall, the Court is left to guess as to the role and relationship of various individuals, including several non-lawyer, third parties.

Second, Respondent fails to correlate his declaration's wholly conclusory assertions of privilege – which are nothing more than empty recitations of the applicable legal standard devoid of factual context – with any specific communication or communications. His failure to do so is particularly egregious in light of this Court's express directive that he "correlate any claimed privilege(s) with specific documents . . . and articulate with particularity the basis for invoking the claimed privilege." Min. Order (Oct. 29, 2010). Far from being particularized, Respondent's showing is so conclusory that it stymies this Court's ability to assess the basis for any claimed privilege.

---

[15] To be clear, the Court is not holding that any privilege has been waived solely due to the formal deficiencies of Respondent's Privilege Log. Rather, the Court concludes only that Respondent and the Interested Parties have utterly failed to adduce sufficient evidence to establish, with reasonable certainty, that the privileges against disclosure have been appropriately invoked. That said, the Court observes that the Privilege Log is the third iteration prepared by Respondent in the course of this action. Plaintiff has never sought leave nor an extension of time to amend or further supplement his Privilege Log, despite being on notice that there were questions as to its sufficiency. *See* Min. Order (Oct. 29, 2010).

Third, and most important for the Court's immediate purposes here, Respondent – who was indisputably representing the Lago Agrio Plaintiffs in one litigation and the Republic in multiple international arbitrations, including the BIT Arbitration – offers no details as to his role at any given moment in time, nor even attempts to identify which litigation or litigations the communications supposedly concern.

These defects are not merely procedural. As a consequence, with respect to the work product privilege, Respondent fails to carry his burden of demonstrating that, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Lutheran Social Servs.*, 186 F.3d at 968. Likewise, the Court cannot say, with reasonable certainty, that the communications withheld on the basis of the attorney-client privilege were made outside the presence of strangers, in counsel's capacity as an attorney, or for the purposes of securing legal advice. *See Elkins*, 250 F.R.D. at 24; *GlaxoSmithKline*, 294 F.3d at 146. In short, Respondent's declaration, Privilege Log, and other materials "do[] not establish any facts necessary to find the attorney-client privilege or work product doctrine protect the sought-after documents." *In re Application of Chevron Corp.*, 2010 WL 3584520, at *6 (S.D. Cal. Sept. 10, 2010).[16]

The immediate case – documents where Respondent is either the author or a recipient – provides a useful illustration. Respondent avers both that he (a) was "an active member of the

---

[16] As described elsewhere, Respondent's broad averments are of heightened concern in light of this Court's *in camera* review of four documents withheld by Respondent (Documents 397-400).

legal team" representing the Lago Agrio Plaintiffs in the Lago Agrio Litigation,[17] and (b) "represent[s] [the Republic] with respect to various international arbitrations," including the BIT Arbitration. Wray Decl. ¶¶ 2-3. The Cover Letter is only more ambiguous, identifying Respondent simply as "Plaintiff counsel, counsel for Ecuador." Despite this ambiguity, Respondent makes no attempt to articulate in the Privilege Log, with reference to competent evidence, what role he was playing with respect to any communication in which he was a participant, or what his relationship was to other participants. The Court is not permitted to guess; rather, Respondent bears the burden of establishing to a reasonable certainty that the privilege has been properly invoked.

Again, these defects are not merely a matter of form. With respect to the work product privilege, which concerns the vast majority of documents at issue, the inquiry divides in two. Where Respondent is the author, without knowing in what capacity Respondent was operating in the context of the given communication and in relation to what proceeding, the Court cannot conclude that Respondent prepared that communication *because of* the litigation (whatever it may be) – *i.e.*, for assisting Respondent in preparing for litigation and not for some other reason. *Alexander*, 192 F.R.D. at 46. Similarly, where Respondent is the recipient, without knowing in what capacity Respondent was operating in the context of a given communication and in relation

---

[17] Although Respondent intimates that he was no longer an "active member" of that team after 2006, Wray Decl. ¶ 2, there is no indication that he ceased having purportedly privileged communications in connection with the Lago Agrio Litigation after 2006. Indeed, if that were the case, there would be no basis for including such communications exclusively between him and counsel for the Lago Agrio Plaintiffs as recently as June of this year (Document 447). Which is just to say, based on the record created by the parties, the Court cannot conclude that all communications after 2006 were made in Respondent's capacity as counsel to the Republic. Nor, for that matter, has anyone so claimed or produced competent evidence in support thereof.

to what proceeding, the Court cannot draw any inferences as to the author's motivations or, for that matter, that the communication was made consistent with the maintenance of secrecy from one's adversary. *Deloitte LLP*, 610 F.3d at 140. In neither instance does the record support the conclusion that there would be a "reasonable basis for believing the recipient would keep the disclosed material confidential." *Id.* The same holds true for the handful of documents withheld pursuant to the attorney-client privilege: absent some context as to Respondent's role and the relationship among the parties, the Court cannot say whether the communication was made for the purposes of legal advice, and in confidence and outside the presence of strangers. *Elkins*, 250 F.R.D. at 24. These defects are fatal, and the Court finds that Respondent and the Interested Parties have failed to carry their burden of proving, by competent evidence and to a reasonable certainty, each of the essential elements necessary to support their claims of privilege for each of communications sent or received by Respondent. Accordingly, Respondent must produce all such documents.[18]

C.      *Documents Involving Cristobal Bonifaz*

The next category merits similar treatment. Cristobal Bonifaz is identified in the Cover Letter only as "Plaintiff counsel; counsel for Ecuador." As a result, as was true with Respondent, when Cristobal Bonifaz is identified in the Privilege Log as the author or recipient of a communication, the Court has no way of knowing, in the context of that communication, in what capacity he was operating or what his relationship was with respect to other participants. Accordingly, Respondent and the Interested Parties have similarly failed to carry their burden

---

[18] Everything *except* Documents 32, 35, 39, 75, 144, 151, 161, 164, 171, 222, 224, 228, 237, 239, and 318-319.

with respect to this category, and therefore Respondent must produce all documents involving Cristobal Bonifaz.[19]

### D. Documents Involving "Bonifaz"

The Cover Letter identifies two individuals by the name of Bonifaz: Cristobal Bonifaz, described as "Plaintiff counsel; counsel for Ecuador;" and John Bonifaz, described only as "Plaintiff counsel." And yet, Respondent's Privilege Log repeatedly references only "Bonifaz," without first-name identification. The Court is inclined to assume that all references to "Bonifaz" are to Cristobal Bonifaz, given that John Bonifaz is identified as participating in communications with the unadorned "Bonifaz" (Documents 303-310). The Court need not, however, make such an inference; at best, Respondent's showing is equivocal as to whether "Bonifaz" is counsel for the Lago Agrio Plaintiffs or the Republic, and with respect to what litigations, and therefore the Court cannot find with reasonable certainty, in the context of a given communication, in what capacity he was operating or what his relationship was with respect to other participants. As such, all documents involving "Bonifaz" must be produced as well.[20]

### E. Documents Disclosed to Third-Party Attorney, Activist, and Reporter

The next category involves communications with three third parties: (a) Daria Fischer, identified by Respondent as a "3rd party attorney;" (b) Esperanza Martinez, identified as a "3rd party activist;" and (c) Letta Tayler, "a 3rd party reporter." To the extent these communications have been withheld on the basis of the attorney-client privilege, Respondent and the Interested

---

[19] Documents 135-137, and 140.

[20] Documents 7, 30-37, 78, 107, 114, 132, 134, 157, 177-178, 214-215, 218-221, 229-236, 247-249, 251, 255-257, 259, 264-265, 296, 301, 311, 329-330, and 362-365.

Parties have utterly failed to demonstrate how communications with third-party attorneys, activists, and reporters is consistent with a reasonable expectation of confidentiality, or, for that matter, how any such communications were made in furtherance of seeking legal advice. Similarly, to the extent such documents have been withheld on the basis of the work product privilege, the record does not support the conclusion – and certainly, not to a reasonable certainty – that communications with third-party attorneys, activists, and reporters could be in preparation for litigation, or made with a reasonable basis for believing that these third parties would keep the disclosed information confidential. Therefore, Applicants are also entitled to disclosure of these documents.[18]

### F. *Documents Disclosed to Various Third-Party Attorneys*

Several documents over which the Lago Agrio Plaintiffs assert work product privilege were disclosed to third-party attorneys for the Republic – namely, David B. Allanoff, Derek Baxter, Eric Bloom, Terry Collingsworth, Marta Escobar, Tomas Leonard, and Robert A. Skirnick. In opposition to Applicants' motion, the Lago Agrio Plaintiffs make no mention of this group, electing instead to address other third parties and parrot non-controversial standards governing the effect of voluntary disclosures. *See* Lago Agrio Pls.' Opp'n at 11-12. As noted by Applicants, the Lago Agrio Plaintiffs do not suggest that there was some sort of joint defense agreement that could salvage their privilege claims, let alone adduce competent evidence in support thereof. *See* Applicants' Reply at 6 n.6. As such, to the extent these communications have been withheld on the basis of the work product privilege, the record does not support the conclusion – and certainly, not to a reasonable certainty – that communications with third party

---

[18] Documents 7, 296, 316-319, 364-365, and 375-377.

attorneys for the Republic could be in preparation for litigation, or made with a reasonable basis for believing that these third parties would keep the disclosed information confidential.

The Republic, for its part, asserts work product privilege only with respect to a subset of these documents (Documents 329-330, 364-367, and 397-400). *See* Republic's Opp'n at 2 n.2. But the Republic offers nothing in addition to an empty invocation of the relevant legal standard, asserted upon its own *ipse dixit* that these communications reflect attorney mental impressions and legal conclusions in connection with ongoing litigations. *See* Republic's Reply at 7. Such conclusory allegations cannot discharge the burden of demonstrating, to a reasonable certainty, that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Lutheran Social Servs.*, 186 F.3d at 968. Moreover, because Respondent is a party to each of the communications, the claim fails for the same reasons described above: without knowing in what capacity Respondent was operating in the context of a given communication and in relation to what proceeding, the Court cannot draw any inferences as to the author's motivations or, for that matter, that the communication was made consistent with the maintenance of secrecy from one's adversary.

Finally, the Court has reviewed *in camera* Documents 397-400, which cannot support the claimed privilege. In an e-mail chain bearing the subject-line, "Re: Lunch?," Respondent and others discuss the timing and location of a meeting. Answering in the affirmative to the question posed in the subject-line, Respondent writes, "Sure. Will Thursday at 1 work for you?" Eric Bloom responds, "That would be great. Do you want to come by the office or meet somewhere? The office address is 1700 K Street." Finally, the exchange ends with Respondent's reply, "Your

Office is OK."  Simply put, the work product privilege does not attach to discussions concerning the timing and location of counsel's lunch.  The Court does not want to minimize the matter; Respondent's specious privilege claims with respect to these particular documents – each of which were logged and withheld as separate communications[19] – casts doubt upon Respondent's claims as a whole.  In any event, none of the documents within this category can be withheld on the basis of the work product privilege.[20]

G.       *Documents for which the Republic Asserts the Attorney-Client Privilege*

The Republic asserts the attorney-client privilege with respect to four documents (Documents 364-367).  The assertion is unavailing.  All four documents involved Respondent. Although the Republic offers its unsworn statement that Respondent was operating in his capacity as counsel for the Republic, *see* Republic's Opp'n at 7, there is no evidentiary support in the record for that assertion, especially given that each of the communications were made at a time when Respondent was still – in his words – an "active member" of the Lago Agrio Plaintiffs' litigation team.  After scouring the Privilege Log, Respondent's declaration, the Cover Letter, and other materials, the Court finds no competent evidence indicating, one way or the other, what Respondent's role was with respect to particular communications.  Therefore, the invocation of the privilege fails for the same reasons it did above: absent competent evidence establishing some context as to Respondent's role and the relationship among the parties, the Court cannot say whether the communication was made for the purposes of legal advice, and in

---

[19]   Respondent should, at the bare minimum, be aware of his obligation to redact and produce non-privileged portions of responsive documents.

[20]   Documents 135-137, 140, 303-310, 329-330, 364-367, and 397-400.

confidence and outside the presence of strangers. Moreover, Documents 366-367 are between Respondent and Marta Escobar, who is identified by Respondent as both "client" and "attorney for Ecuador," without any further specification or context. Finally, Documents 364-365 both involve Esperanza Martinez, the "3rd party activist" – and Juan Velasco, purportedly "counsel for Petroecuador," is copied on Document 364 – which alone vitiates the privilege absent countervailing record support. Thus, the attorney-client privilege does not shield these documents from production.[21]

## H. Documents Disclosed to Testifying Experts

In their moving papers, Applicants argued that communications that were sent to or received from the Lago Agrio Plaintiffs' testifying experts were subject to a "bright-line" rule of full disclosure. Mot. to Compel at 8.[22] Indeed, Applicants specifically identified three such individuals by name: (a) Charles Calmbacher; (b) Edison Camino; and (c) Oscar Davila. *Id.* Nevertheless, in opposing the present motion, neither Respondent nor the Lago Agrio Plaintiffs offer any rejoinder either to Applicants' contention that the individuals identified are in fact "testifying experts" or that, as a consequence, their communications are subject to full disclosure. Lago Agrio Pls.' Opp'n at 11-12. *See Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201

---

[21] Documents 364-367.

[22] Although no court within this District appears to have endorsed the so-called "bright line" rule, the majority approach, that rule directs that any matters considered by a testifying expert are automatically discoverable – *i.e.*, any materials that an expert generated, reviewed, reflected upon, read, or used in formulating his or her conclusions, irrespective of whether those materials were ultimately relied upon by the expert in reaching his or her opinions. *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005); *see also South Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 612 (E.D. Cal. 2009) (collecting cases).

(D.D.C. 2009) (where party fails to respond to arguments in opposition papers, the court may treat them as conceded) (citing *Fed. Deposit Ins. Co. v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997). Accordingly, documents involving Calmbacher, Camino, and Davila are discoverable on this ground alone.[23]

In their reply papers, Applicants identify additional individuals purportedly within the confines of the "testifying expert" category, including Jen Bilbao, Jorge Jurado, and David Russell, each of whom is identified by Respondent as a "retained expert" or "retained consultant." *See* Applicants' Reply at 6. Because the Court concludes that neither Respondent nor the Lago Agrio Plaintiffs were on sufficient notice that Applicants were claiming such individuals qualified as testifying experts, and because the record is not clear on the point, the Court does not reach the issue. In any event, each of the documents are captured within other categories for which production is required.

Similarly, Applicants seek the disclosure of documents involving three additional third parties not heretofore discussed: (a) Luis Yanza, identified as "member of litigation team;" (b) Lauren Schrero, identified as "retained legal research assistant;" and (c) Manuel Pallares, identified as a "retained consultant." The parties dispute, with varying degrees of specificity, the precise roles these individuals played in the context of the Lago Agrio Litigation. *See* Mot. to Compel at 10; Lago Agrio Pls.' Opp'n at 11-12; Applicants' Reply at 6. Because each of the communications affected are also captured within other categories for which production is

---

[23] Documents 1, 4, 8, 11, 14-21, 23-24, 27, 39, 57-58, 63-64, 66-68, 104, 112-113, 115, 120, 124-129, 139, 141-145, 148, 151-155, 157, 161-162, 164-176, 179-182, 184-186, 188-189, 191, 193-198, 200, 202-207, 210-211, 224-225, 227-238, 240-241, 243-249, 251, 253-254, 258, 266-269, 270-273, 293, 302, 314-315, 332-333, and 338-339.

required, the Court need not reach the issue. Applicants are, of course, free to put to Respondent foundational questions regarding the role of such individuals during the course of his deposition.

I.  *Documents Allegedly Relating to the Subject-Matter of the* Crude *Documentary*

Applicants further contend that an unidentified number of documents identified on Respondent's Privilege Log touch upon the same topics that the Lago Agrio Plaintiffs' counsel were captured discussing during the filming of a documentary film titled "Crude." Mot. to Compel at 7. The Lago Agrio Plaintiffs persuasively counter that Applicants have failed to make a sufficiently particularized showing to justify the broad subject-matter waiver they seek. Briefly stated, Applicants make no effort to correlate specific excerpts from the documentary, for which there are transcripts, with comparable entries on Respondent's Privilege Log, such that would allow this Court to draw the conclusion that the specific topics are sufficiently aligned. Accordingly, as the record now stands, this cannot serve as a basis for compelling production of otherwise privileged documents.

J.  *Substantial Need, Undue Hardship, and Crime-Fraud*

Although the Court does not consider it necessary to reach the issue in light of its other conclusions, it nevertheless pauses to observe that there is some merit to Applicants' assertions that they have a "substantial need" for the materials at issue and cannot, without undue hardship, obtain their substantial equivalent by other means. The evidence sought "undoubtedly goes to the heart" of Applicants' claims and defenses in the foreign proceedings, *HealthSouth Corp.*, 250 F.R.D. at 13, and the Court fails to see how Applicants could obtain the substantial equivalent of such evidence through other avenues, particularly given the Interested Parties' positions in this action. Moreover, despite their generalized and conclusory allegations to the contrary, neither

Respondent nor the Interested Parties point to any competent evidence in the record that would suggest that the communications at issue contain core attorney work product – *i.e.*, the sort of "mental impressions, conclusions, opinions, or legal theories" that may merit heightened scrutiny. Fed. R. Civ. P. 26(b)(3)(B). Ultimately, however, the Court need not reach the issue, and it declines to do so. Nor will the Court opine on the merits of Applicants' proffered "crime-fraud exception" argument based on the record created by the parties. *See Stratus Consulting*, 2010 WL 3923092, at *11 (deferring to Ecuadorian courts to adjudicate allegations concerning crime-fraud).

## V.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties, and has concluded that they are without merit. Therefore, and for the reasons stated above, the Court shall GRANT Applicants' Motion to Compel. An appropriate Order accompanies this Memorandum Opinion.

Date:   November 3, 2010

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge